**SCHOOL DISTRICT OF KETTLE MORAINE, Plaintiff,**

v.

**Herbert J. GROVER, Superintendent of Public Instruction of the State of Wisconsin, Carlo S. and Judith S., Parents of Stacy S., Defendants.**

**No. Civ. A. 89–C–1576.**

United States District Court, E.D. Wisconsin.

Oct. 25, 1990.

William E. Callahan, Jr., Davis & Kuelthau, S.C., Milwaukee, Wis., for plaintiff.

Thomas K. Voss, Love, Voss & Murray, Waukesha, Wis., for Parents Carlos S. and Judith S.

Warren D. Weinstein, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for Superintendent of Public Instruction.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

Stacy S. ("Stacy") is a sixteen-year-old with Downs Syndrome who is mentally handicapped and suffers serious speech and language difficulties. She resides within the boundaries of the plaintiff Kettle Moraine School District ("the school district") with her family. Prior to the 1989–90 school year, the school district proposed that Stacy be placed in the trainable mentally handicapped ("TMH") program at Kettle Moraine High School ("KMHS"), the neighborhood school that Stacy would attend if she were not handicapped. Stacy's parents disputed the appropriateness of this proposed placement. That disagreement eventually led the parents to seek administrative review of the placement. Presently before this court is the school district's appeal, pursuant to 20 U.S.C. § 1415(e)(2), of the state level administrative decision.

The parents believe, for the reasons described in the "Findings of Fact" section below, that Stacy can best be educated at Fairview South, a totally segregated facility operated by the Elmbrook Public School System. Consequently, on July 18, 1989, the parents filed with the school district a request for hearing to challenge the district's proposed placement. On October 2, 1989, Dr. C. Steward Robertshaw, the Special Education Hearing Officer ("local level hearing officer") appointed pursuant to 20 U.S.C. § 1415(b)(2), issued a decision in which he determined that the plaintiff school district's proposed placement at KMHS satisfied the requirements of the Education for All Handicapped Children Act ("EAHCA" or "the Act"), 20 U.S.C. §§ 1400–1485.

On October 16, 1989, the parents appealed the local level hearing officer's decision to the state education agency, the Wisconsin Superintendent of Public Instruction, pursuant to 20 U.S.C. § 1415(c). On November 15, 1989, Raymond M. Roder, the Independent Review Officer ("IRO") appointed by defendant Wisconsin Superintendent of Public Instruction, reversed the decision of the local level hearing officer in its entirety and ordered the plaintiff school district to offer Stacy placement at Fairview South.

On December 28, 1989, the plaintiff school district appealed the IRO's decision to this court, pursuant to § 615(e)(2) of the Act, 20 U.S.C. § 1415(e)(2). The school district alleged in its complaint that the IRO made findings of fact that were contrary to the record and rendered a ruling that was contrary to the requirements of the EAHCA. On July 31, 1990, the school district moved for summary determination that its proposed placement of Stacy at KMHS met the requirements of the EAHCA. On August 24, 1991, the parents filed a cross-motion for summary determination that the district's proposed placement was inappropriate under the Act. Stacy has not attended classes this fall pending the outcome of this lawsuit.

Based upon the application of the relevant provisions of the EAHCA to the facts attendant to Stacy's circumstances, this court finds that the Individualized Education Program ("IEP") proposed for Stacy by the school district would provide Stacy with a "free appropriate public education"

as required by the EAHCA, 20 U.S.C. § 1412(1).

## SCOPE OF REVIEW

■ In reviewing the decisions reached at the local and state level administrative proceedings, the role of the district court is to make an independent decision as to whether the requirements of the Act have been satisfied. *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 293 (7th Cir. 1988). That decision is to be based on a preponderance of the evidence, giving due weight to the results of those state administrative proceedings. *Id.; see also* 20 U.S.C. § 1415(e)(2). The court may also hear additional evidence at the request of a party and may grant such relief as the court deems appropriate. 20 U.S.C. § 1415(e)(2).

In ruling on the cross-motions for summary judgment, this court conducted in the presence of counsel a fact-finding tour of KMHS and Fairview South, and it also met with Stacy and her mother at their home. Additionally, this court held a hearing which commenced on October 12 and continued on October 16, 1990, during which the parties supplemented the record with live witness testimony.[1]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. *The Legal Issue Before the Court*

Under 20 U.S.C. § 1412(1), a state receiving federal aid under the Act must assure all handicapped children the right to a free

appropriate public education. In *Westchester County v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court set forth the standards that a school district must meet in order to satisfy its obligation to provide all handicapped students with a free appropriate public education. In *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 293 (7th Cir.1988), the Seventh Circuit Court of Appeals followed *Rowley* in directing the district court to engage in the following two-part inquiry in suits brought under § 615(e)(2) of the Act:

First, [the court must inquire whether] the State has complied with the procedures set forth in the Act[.] And second, [the court must ask] is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

852 F.2d at 293 (bracketed material in original) (citing *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051).

As in *Lachman*, the parties have stipulated that the procedures required by the EAHCA have been followed in this case. The parents have alleged no procedural violations in the school district's preparation of (1) Stacy's multi-disciplinary team report, (*see* 34 CFR § 800.530–534), (2) her IEP (20 U.S.C. § 1401(a)(19), 34 CFR § 300.340–349)[2], or (3) her placement offer

---

1. During the pretrial conference on October 5, 1990, the parties stipulated that summary disposition of this case would be appropriate, but the court requested the opportunity to visit KMHS and Fairview South and to meet with Stacy. The parties agreed to arrange these visits, and they suggested that the court additionally hear live witness testimony to assist the court in its evaluation of the schools. Consequently, the court conducted in the presence of counsel a fact-finding tour of the schools and met with the Stacy and her mother on October 10, 1990. The court then held a hearing on the cross-motions for summary judgment, at which the parties introduced live witness testimony, which commenced on October 12 and continued on October 16, 1990.

2. The defendants have not challenged in this court nor in the administrative hearings below the procedural validity of Stacy's original 1989–90 IEP. However, during the hearing held in this court on October 12 and October 16, 1990, defendants did assert that plaintiffs failed to follow the proper procedures in drafting the 1990–91 IEP for Stacy. The defendants reasoned that under 20 U.S.C. § 1415(e)(3), Stacy must continue to be educated in her current educational placement (in this case the Meadow View School in Oconomowoc, Wisconsin) during the pendency of the proceedings. Therefore, the defendants argued that KMHS had no authority to prepare an IEP for Stacy for the 1990–91 school year, and objected to the admission in evidence of the IEP. This court overruled the objection on the grounds that (1) the

(34 CFR § 300.533). Thus, this court need only address the first part of the *Rowley* test, namely whether the IEP at KMHS is reasonably calculated to enable Stacy to receive educational benefits.

The parties do not dispute, however, that Stacy needs special education,[3] that the IEP is generally appropriate to meet her needs, or that KMHS offers the least restrictive educational environment ("LRE")[4] of the two schools.

Congress has expressed a very clear preference for educating handicapped children in the least restrictive environment. The EAHCA provides, in part, that a state must demonstrate that it has established procedures to assure that:

> [T]o the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(5)(B).[5]

■ Under *Lachman*, however, this court is not to consider this preference until this court has determined that the Stacy's IEP can be implemented in that least restrictive environment. *Lachman*, 852 F.2d at 295. In *Lachman*, the Seventh Circuit Court of Appeals noted the primacy

that courts have assigned to the free appropriate public education requirement over the LRE requirement:

> The remainder of the relevant reported case law pertaining to § 1412(5)(B) reflects a perception that the mainstreaming preference the statutory provision creates was not meant by Congress to be implemented in an unqualified manner. Instead, it is clear that the courts considering this issue have determined that the Act's mainstreaming preference is to be given effect only when it is clear that the education of the particular handicapped child can be achieved satisfactorily in the type of mainstream environment sought by the challengers to the IEP proposed for that child.

*Lachman*, 852 F.2d at 295 (footnotes omitted).

■ Thus, the narrow issue for this court to decide is whether Stacy's IEP can be implemented reasonably satisfactorily at KMHS. Once this court determines that the IEP can be implemented there, then it must necessarily hold that placement at KMHS is in accordance with the Act, because KMHS offers the least restrictive educational environment.

**B.  *Findings of Fact.***

The parents have objected to the school district's proposed placement on the grounds that this placement would not meet Stacy's social and cultural needs.

---

school district was obligated to prepare an IEP for the 1990–91 school year pending the outcome of this case, and (2) the school district's preparation of the IEP was in all other respects procedurally valid under 20 U.S.C. § 1401(a)(19).

**3.**  Defendants' brief in opposition to plaintiff's motion for summary judgment at 6.

**4.**  KMHS is the "integrated" school which Stacy would attend if she were not handicapped; it is therefore the least restrictive environment. *See* 34 CFR § 300.550(b)(1) (least restrictive environment—general); 34 CFR § 300.552(c) (least restrictive environment—placement).

**5.**  The regulations promulgated by the United States Office of Education further define this requirement:

(b) Each public agency shall insure:
(1) That to the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped, and
(2) That special classes, separate schooling or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
34 CFR § 300.550(b).

In addition, 34 CFR § 300.552(d) provides:
(d) In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of services which he or she needs.

They voiced three general concerns about the KMHS placement: first, that KMHS offered fewer opportunities for meaningful socialization, in part because virtually all of Stacy's close friends from Meadowview School were now attending Fairview South rather than KMHS; second, that the integrated environment at KMHS was more hostile and insensitive to the needs of mentally handicapped students than was the segregated environment at Fairview South; and third, that the Special Olympics program at Fairview South was more extensive than that at KMHS. Based upon the records of the two previous administrative hearings and upon the testimony in the case, this court finds that these objections to the KMHS placement, although genuinely felt by the parents, are not of the nature as to preclude KMHS from offering Stacy a free appropriate public education.

### 1. The KMHS Placement Would Meet Stacy's Social Needs.

Stacy's need for continued social development has been identified as one of her primary educational needs. The local level hearing officer, based upon his review of Stacy's multidisciplinary-team ("M-team") report and corresponding IEP, made the following undisputed finding:

> 11. Continued development of Stacy's socialization skills and connectedness to the school experience are important concerns that need to be addressed in any educational program to which Stacy is assigned. That is, Stacy will be successful in this world primarily upon the strength of her continuing social sophistication and ability to get along with others.

(Decision of Local Level Hearing Officer, Record at 113). It was largely because of the alleged limitation on Stacy's contact with non-handicapped age-appropriate peers at KMHS that the Independent Review Officer ("IRO") rejected an integrated placement for Stacy. The IRO framed his analysis as follows:

> The two placement choices which are available for the Child are the EEN [Exceptional Educational Needs] classrooms within the KMHS and the segregated but more flexible facility at Fairview South.
>
> KMHS would appear to be the less restrictive environment as compared to Fairview, by definition. However, that differential is not so unequivocal in light of the actual physical features of the KMHS EEN facilities, the regimentation of the KMHS students as compared to those at Fairview South and the essentially incidental, unplanned contact between KMHS's EEN students and its nonEEN students.

(IRO Decision, Record at 18).

This court finds that Stacy's socialization needs would be met at KMHS. According to the testimony of plaintiff's experts Drs. Rostetter and Sweet, Stacy's socialization needs could be met *only* at KMHS because only that school would provide Stacy with any opportunities to interact with age-appropriate non-handicapped peers. These experts noted that while it was important that Stacy continue her friendships with her handicapped peers at Fairview South, it was essential for her social development that she interact with age-appropriate non-handicapped peers. These experts therefore concluded that Stacy's IEP could not be successfully implemented at Fairview South.

In addition, the testimony offered by KMHS teachers and administrators convinces this court that Stacy would in fact enjoy meaningful interaction with age-appropriate non-handicapped students. Ms. Lynda Cooper, the teacher who is responsible for the Educable Mentally Handicapped ("EMH") and the Trainable Mentally Handicapped ("TMH") classes at KMHS, described well the significant efforts that KMHS has made to encourage interaction between handicapped and non-handicapped students. Ms. Cooper noted that EMH and TMH students travel through the hallways, eat lunch in the cafeteria, and read in the library along with non-exceptional educational needs students ("non-EEN students"); some EMH and TMH students are mainstreamed into some regular classes, such as Art II, Adaptive Physical Education, and occasionally Chorus; some

EMH and TMH students participate in other classes, such as Food Preparation and Marketing (by helping to stock the school store). Ms. Cooper also noted that Stacy's current IEP calls for her to be mainstreamed into both a regular Art II class and an Adaptive Physical Education class.

Ms. Cooper also testified that these integration efforts did not follow closely upon the heels of this lawsuit, but have been the product of a genuine long-term commitment to the integration of EEN students into the KMHS community. To support this assertion, she noted that the EMH and TMH programs at KMHS have been in place for many years, that KMHS currently educates a significant number (twenty) of TMH and EMH students, and that within the past year KMHS conducted an in-service workshop whose aim was to sensitize the KMHS faculty to the needs of EEN students.

This court finds that, contrary to the IRO's conclusions, Stacy's contact with non-EEN students at KMHS would not be merely "incidental" and "unplanned," but rather would be significant and ongoing.

By all accounts in the record, and based upon this court's meeting with Stacy, it is apparent that she is an effervescent young woman who has been raised in a loving family. If it is at all possible for EMH and TMH students to succeed in integrated educational environments like KMHS, then Stacy is certainly one person who can do so. Thus, placement at KMHS would meet the social needs identified in Stacy's IEP.

2. Placement at KMHS Would not Have a Harmful Effect on Stacy or on the Quality of Educational Services at KMHS.

The parents have on several occasions expressed a genuine concern that KMHS will prove to be an excessively hostile educational environment. Placement at KMHS would indeed be inappropriate if the school's environment were so hostile that it would have a harmful effect on the child or to the quality of educational services. 34 CFR § 300.552(d). This court has found, however, no credible evidence to support this concern.

Non-handicapped students may sometimes jeer their handicapped peers in integrated school environments, but this is not a problem at KMHS, and KMHS has made a sincere commitment to sensitize the school community to the needs of EMH and TMH students, through, for example, its recent in-service program.

Stacy's past academic experiences and the preponderance of the expert testimony offered before this court suggests that Stacy will be able to cope with the KMHS environment. In her placement at Meadow View School during the 1988–89 school year, Stacy was integrated with non-handicapped peers during assemblies, lunch, and sporting activities. Stacy's success in that integrated environment suggests that she will experience similar success at KMHS. Stacy's friendly personality, her family's strong emotional support, and the fact that her younger brother will join her at KMHS during the 1991–92 school year provide further support for this conclusion.

Therefore, this court finds that placement at KMHS will not have a harmful effect on Stacy or the quality of educational services that she receives.

3. The Recreational Opportunities at KMHS are Legally Sufficient.

The parents also oppose the school district's proposed placement because they feel that KMHS will not offer sufficient recreational opportunities to their daughter. The record confirms that Stacy possesses excellent physical skills which are equivalent to those of a non-handicapped fifth-grader, and that Stacy enjoys sports very much.

This court finds that Stacy's recreational and physical education needs can be met adequately at KMHS. Ms. Cooper testified that Stacy will be mainstreamed into an adaptive physical education class. She also testified that Stacy would have ample opportunities to participate in Special Olympics through the KMHS program. According to Ms. Cooper, fourteen EMH and TMH students participated in one or more of the four Special Olympics sports programs offered at KMHS during the 1989–90 school year. Significantly, the students partici-

pated in some of these sports, such as bowling, on a weekly basis. In addition, some of the Special Olympics participants qualified for, and participated in, state and area meets. Through its recreational programs, KMHS meets its statutory obligation of providing Stacy with a free appropriate public education.

## CONCLUSION

On the basis of the above reasoning, this court finds that the plaintiff school district's proposed placement of Stacy at KMHS is in accordance with the requirements of the EAHCA. KMHS would provide Stacy with a free appropriate public education to the extent that its implementation of her IEP appears reasonably calculated to enable her to receive educational benefits. *Lachman*, 852 F.2d at 293. Moreover, KMHS is the least restrictive learning environment for Stacy. Therefore, through its proposed placement, KMHS has met its statutory obligation under the EAHCA, and this court can require it to do no more.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment is GRANTED;

IT IS FURTHER ORDERED that defendants' cross-motion for summary judgment is DENIED.